IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| BANK OF BENTONVILLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 01-5130-CV-SW-SWH |
| | ) | |
| WACROSS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Bank of Bentonville, an Arkansas banking corporation with its principal place of business in Benton County, Arkansas, made a number of loans to defendant Wacross, Inc. which are the subject of this lawsuit. Defendant Wacross, Inc. executed promissory notes secured by various collateral and personal guarantees provided by the individual defendants. The parties stipulated that the defendants defaulted on their obligations under the loan agreements, but that plaintiff failed to strictly comply with the notice provisions of the Uniform Commercial Code (UCC) in its collection efforts. Thus, the issue before the Court is whether Missouri or Arkansas law should be applied in determining the effect of plaintiff's failure to strictly comply with the notice provisions of the UCC. The parties submitted this issue to the Court for ruling based upon a Joint Stipulation of Uncontroverted Facts and Exhibits.

### I. STIPULATED FACTS

1. Plaintiff, the Bank of Bentonville, an Arkansas banking corporation made the loans that are the subject of this action through its First Gravette Branch, located in Gravette, Benton County, Arkansas. (S.F. # 1) Plaintiff, Arvest Bank, is the successor by merger to the Bank of Bentonville. (S.F. # 1)

2. Defendant Wacross, Inc., is a Missouri corporation with its principal place of

business in McDonald County, Missouri. (S.F. # 2) Defendants Arnold, Shirley, Douglas, and Barbara Landers are residents of McDonald County, Missouri. (S.F. # 3-6; 18) Defendant Leo Jack Davis is a resident of Enid, Oklahoma, and defendant Jack Davis, Inc. is an Oklahoma Corporation with its principal place of business in Enid, Oklahoma. (S.F. # 7-8)

Loan No. 20546248–$1,650,000.00

3. On December 26, 1998, defendant Wacross, Inc., executed and delivered to plaintiff a promissory note providing for loans in the maximum principal amount of $1,650,000.00. (Ex. 1) The interest rate was 9 % and the note was due on December 26, 1999. (Id.) The purpose of the note was "business: refinance farming operation & operating expense." The note also provided: "This note is secured by: all now owned or hereafter acquired farm equipment of every kind and description including all parts, attachments and accessions thereto located at debtors place of business or wherever located included in but not limited to the following attached list in regards to livestock this instrument covers all livestock now owned, all increases, all replacements, all after acquired livestock, products and proceeds from the sale thereof acquired by debtor to be used wherever located included but not limited to the following: 5,096 yearlings on grass & approx 2942 yearlings in feed lots." A listing of equipment was attached to Exhibit 1.

4. Exhibit 1, the promissory note, was signed by Arnold and Shirley Landers as President and Secretary of Wacross, Inc. and by M. Malcom Winters for the lender.

5. A line of credit agreement was also executed by the same parties on December 26, 1998. (Ex. 2)

6. Guaranty agreements to guarantee repayment of the debt represented by Exhibit 1, were executed by defendants Arnold and Shirley Landers (Ex. 3) and Doug Landers (Ex. 4). (S.F. # 23 and 24)

7. The indebtedness outstanding under Exhibit 1 was renewed by a renewal promissory noted dated January 25, 2000, executed by Arnold and Shirley Landers as President and Secretary of Wacross. The interest rate was 9 % and the maturity date was August 15, 2000. (Ex. 5, S.F. # 25)

8. The extension gave the lender security in all now owned or after acquired farm equipment, all livestock now owed, all increases, all replacements, all after acquired livestock, products and proceeds from the sale thereof, including but not limited to 8000 head of yearlings, 850 cows and 50 bulls. (Ex. 5)

9. Guaranty agreements to guarantee repayment of the debt represented by the renewal of the promissory note (Ex. 5) were executed by Arnold and Shirley Landers (Ex. 6)

and Doug Landers (Ex. 7) (S.F. # 26 and 27)

10. Exhibit 8 is a business record of the bank showing advances of funds, payments received, and balances owed on loan no. 20546248. The outstanding balance due to plaintiff from the defendant Wacross, Inc., as of June 30, 2005, was $1,689,767.52 with interest continuing to accrue after that date at the rate of $289.81 per day. (S.F. # 29)

11. The maturity date of the indebtedness represented by Exhibit 5 has passed. Plaintiff has demanded payment, but defendant Wacross, Inc., and the guarantors, Arnold, Shirley and Doug Landers have failed to pay the debt. (S.F. # 31)

Loan Number 20546250– $400,000.00

12. On December 26, 1998, defendant Wacross, Inc., executed and delivered to plaintiff a promissory note providing for loans in the maximum principal amount of $400,000.00 (Ex. 9) The interest rate was 9 % and the note was due on December 26, 1999. (Id.) The purpose of the note was "business: feeding & operating expenses." The note also provided: "This note is secured by: in regards to cattle, this instrument covers all cattle now owned, all increases, all replacements, all after acquired cattle, products and proceeds from the sale thereof, acquired by debtor to be used wherever located included in but not limited the following: approximately 7138 yearlings, 1000 cows; all now owned or hereafter acquired farm equipment of every kind and description including all parts, attachments, and accessions thereto, included in but not limited to: see attached list, located at debtor's place of business wherever located. A listing of equipment was attached.

13. Exhibit 9, the promissory note, was signed by Arnold and Shirley Landers as President and Secretary of Wacross, Inc. and by M. Malcom Winters for the lender.

14. A line of credit agreement was also executed by the same parties on December 26, 1998. (Ex. 10)

15. Guaranty agreements to guarantee repayment of the debt represented by Exhibit 9, were executed by defendants Arnold and Shirley Landers (Ex. 11) and Doug Landers (Ex. 12). (S.F. # 33 and 34)

16. The indebtedness outstanding under Exhibit 9 was renewed by a renewal promissory noted dated January 25, 2000 executed by Arnold and Shirley Landers as President and Secretary of Wacross, Inc. The interest rate was 9 % and the maturity date was August 15, 2000. (Ex. 13, S.F. # 35)

17. The extension gave the lender security in all livestock now owned, all increases, all replacements, all after acquired livestock, products and proceeds from the sale

3

thereof, acquired by debtor to be used wherever located, included in but not limited to the following: 8,000 head of yearlings, 850 cows, 50 bulls; all now owned or hereafter acquired all farm equipment of every kind and description including all parts, attachments and accessions thereto, located at debtor's place of business or wherever located. (Ex. 13)

18. Guaranty agreements to guarantee repayment of the debt represented by the renewal of the promissory note (Ex. 13) were executed by Arnold and Shirley Landers (Ex. 14) and Doug Landers (Ex. 15) (S.F. # 36 and 37)

19. Exhibit 16 is a business record of the bank showing advances of funds, payments received, and balances owed on loan no. 20546250. The outstanding balance due to plaintiff from the defendant Wacross, Inc., as of June 30, 2005, was $568,015.00 with interest continuing to accrue after that date at the rate of $96.21 per day. (S.F. # 39)

20. The maturity date of the indebtedness represented by Exhibit 13 has passed. Plaintiff has demanded payment but defendant Wacross, Inc., and the guarantors, Arnold, Shirley and Doug Landers have failed to repay the debt. (S.F. # 41)

Loan No. 20546249–$300,000.00

21. On December 26, 1998, defendant Wacross, Inc., executed and delivered to plaintiff a promissory note providing for loans in the maximum principal amount of $300,000.00. (Ex. 17) The interest rate was 9 % and the note was due on demand or if no demand is made by December 26, 1999. (Id.) The purpose of the note was "business: line of credit to purchase cows." (Ex. 17; S.F. # 42)

22. Exhibit 17, the promissory note, was signed by Arnold and Shirley Landers as President and Secretary of Wacross, Inc. and by M. Malcom Winters for the lender.

23. A line of credit agreement was also executed by the same parties on December 26, 1998. (Ex. 18)

24. Guaranty agreements to guarantee repayment of the debt represented by Exhibit 17, were executed by defendants Arnold and Shirley Landers (Ex. 19) and Doug Landers (Ex. 20). (S.F. # 43 and 44)

25. The indebtedness outstanding under Exhibit 17 was renewed by a renewal promissory noted dated January 25, 2000, executed by Arnold and Shirley Landers as President and Secretary of Wacross in the principal amount of $240,000.00. The interest rate was 9 % , and the maturity date was on demand or if no demand was made then it was due on August 15, 2000. (Ex. 21, S.F. # 45)

4

26. The extension gave the lender security in "all livestock now owned, all increases, all replacements, all after acquired livestock, products and proceeds from the sale thereof, acquired by the debtor to be used wherever located, included in but not limited to 8,000 head of yearlings, 850 cows, 50 bulls; all now owned or hereafter acquired all farm equipment of every kind and description including all parts, attachments and accessions thereto, located at debtor's place of business or wherever located." (Ex. 21)

27. Guaranty agreements to guarantee repayment of the debt represented by the renewal of the promissory note (Ex. 21) were executed by Arnold and Shirley Landers (Ex. 22) and Doug Landers (Ex. 23) (S.F. # 46 and 47)

28. Exhibit 24 is a business record of the bank showing advances of funds, payments received, and balances owed on loan no. 20546249. The outstanding balance due to plaintiff from the defendant Wacross, Inc., as of June 30, 2005, was $338,403.99 with interest continuing to accrue after that date at the rate of $55.91 per day. (S.F. # 49-50)

29. The maturity date of the indebtedness represented by Exhibit 21 has passed. Plaintiff has demanded payment but defendant Wacross, Inc., and the guarantors, Arnold, Shirley and Doug Landers, have failed to repay the debt. (S.F. # 51)

Loan No. 17727065–$105,000

30. On October 8, 1999, Douglas and Barbara Landers executed a promissory noted in the amount of $105,000.00. The interest rate was 9.5 % and the term was on demand or if no demand is made by October 31, 1999. (Ex. 27)

31. The note was for the purchase of cattle for resale. It was secured by "In regards to livestock, this instrument covers all livestock now owned, all increases, all replacements, all after acquired livestock, products and proceeds from the sale thereof, acquired by debtor to be used wherever located, included in but not limited to the following: 187 mixed cows, 5 bulls, 86 calves and 78 yearlings." (Ex. 27)

32. The indebtedness represented by Exhibit 27 was renewed, by a promissory note in the amount of $70,472.00 dated November 3, 1999 with a maturity date of November 3, 2000. (Ex. 28)

33. Exhibit 29 is a business record of the bank showing advances of funds, payments received, and balances owed on loan no. 17727065. The outstanding balance due to plaintiff from the defendants Douglas and Barbara Landers on this note as of June 30, 2005, was $43,287.68 with interest continuing to accrue after that date at the rate of $6.16 per day. (S.F. # 58, 59 and Ex. 29)

34. The maturity date of the indebtedness represented by Exhibit 28 has passed. Plaintiff has demanded payment but defendants Douglas and Barbara Landers have failed to repay the debt. (S.F. # 60)

Forbearance Agreement and Deed of Trust

35. After the maturity of the debt represented by Exhibits 5, 13 and 21, to induce plaintiff to forebear enforcement of its remedies and to further secure the debt, Wacross, Inc., Douglas and Barbara Landers, and Arnold and Shirley Landers and plaintiff entered into a forbearance agreement on December 7, 2000. (Ex. 25) The agreement granted plaintiff liens upon various tracts of real property in which said defendants held interests. The property was situated in McDonald County, Missouri. ( Ex. 25; S.F.# 52)

36. On November 27, 2000, Douglas and Barbara Landers gave to the lender a Deed of Trust in certain real estate in McDonald County to secure promissory notes, 17727065, 20546250, 20546248 and 20546249. (Ex. 26) The deed of trust was recorded on November 29, 2000. (S.F. # 54)

37. Defendant Leo Jack Davis owns an undivided one-half interest in the real property described in Exhibit 26 by virtue of a warranty deed dated June 12, 1998 which was filed of record on June 29, 1998 in the office of the Circuit Clerk and Recorder of McDonald County, Missouri. (S.F. # 61)

38. Defendant Jack Davis, Inc. holds a first lien on the real property described in Exhibit 26 by virtue of a deed of trust dated June 22, 1998, and executed by Leo Jack Davis and Douglas Arnold Landers in favor of Abe Paul as trustee for Jack Davis, Inc., which deed of trust was filed for record on June 29, 1998 with the Circuit Clerk and Recorder of McDonald County Missouri. The balance owed to Jack Davis, Inc. and secured by the first lien is $145,177.47. (S.F. # 62)

39. Plaintiff has obtained possession of various pieces of collateral in the form of farm equipment and machinery. (See S.F. # 63, 65-73) The notices of disposition of collateral submitted as Exhibits 38 through 42 incorrectly described one of the items of collateral that plaintiff intended to offer for sale at auction. The notice described a "Starlite 8 ½ x 32 Stock Trailer" when in fact the trailer the plaintiff had in its possession and sold at auction was the 1991 Gooseneck ground load pot, model 91–40x76, VIN 16G60L18MB042941. (S.F.# 73)

Contacts

40. The loan officer with whom the defendants dealt in connection with the loans that are the subject of this action was M. Malcolm Winters, who was the President of First Gravette Branch Bank of Bentonville. (S.F. # 13)

41. The defendants met with Mr. Winters to discuss the loans that are the subject of this action and to execute documents in connection with the loans in both Missouri and Arkansas. (S.F. # 14)

42. Exhibit 25, the forbearance agreement dated December 7, 2000 was executed by Mr. Winters on behalf of the plaintiff in Arkansas and by the defendants in Missouri. (S.F. #15)

43. At the time the loans that are the subject of the action were originally made, the collateral for the loans was approximately 8900 head of cattle that were located on various farms in southwest Missouri and at feed lots in Kansas, Oklahoma and Texas and by farm equipment located primarily in southwest Missouri. (S.F. # 16)

44. All of the loans made by the plaintiff to defendants were approved by committees of the plaintiff in Benton County, Arkansas and all advances made on the loans were made from the offices of plaintiff in Benton County, Arkansas. (S.F. # 17)

45. The "original loan documents" executed in connection with the loans made by the plaintiff to Wacross, Inc. were executed by the defendants at the offices of the First Gravette Branch of the Bank of Bentonville in Gravette, Benton County, Arkansas. (S.F. # 19)

46. Some of the documents executed by the defendants in connection with the loans after the original loans were made were executed by the defendants in McDonald County, Missouri and some of the documents executed by the defendants in connection with the loans after the original loans were made were executed by the defendants in Benton County, Arkansas. (S.F. # 20)

47. All of the loans made by the Plaintiff to the Defendants were business purpose loans made to finance the acquisition of cattle and operation of the cattle business of the Defendants. (S.F. # 21)

Disposition Efforts

48. The parties agree that plaintiff failed to strictly comply with the notice provisions of the Uniform Commercial Code relating to the collection, enforcement and disposition of the collateral pledged by the defendants. (S.F. # 89)

49. The John Deere tractor was sold on November 20, 2003, and the Holden flat bed trailer was sold on December 6, 2003. (S.F. #77, 79)

50. The parties agree that the amount of proceeds the plaintiff would have realized had the plaintiff strictly complied with the provisions of the UCC relating to the collection, enforcement and disposition of the collateral would be in an amount equal to the fair market value of all equipment as shown on the financial statements of

7

Wacross, Inc. in the amount of $229,750.00

## II. LEGAL ANALYSIS

Plaintiff argues that the parties to the security agreements agreed that Arkansas law would govern the obligations of the parties. (Plaintiff's Brief, doc. # 66 at 3) Further, plaintiff contends that because the loans are substantially related to the state of Arkansas, the law chosen by the parties to govern their transaction should be honored by the Court. (Id.) Plaintiff points out that $34,189.50 was received for the sale of collateral. However, as a result of the its acknowledged failure to comply with the UCC in the sale of the collateral, plaintiff maintains that defendants are entitled to a credit of $229,750.00 less any amounts actually received and applied to the loans, i.e., $34,189.50, for an actual credit of $195,560.50. (Plaintiff's Brief, doc. # 66 at 6-8) Thus, plaintiff contends that it is entitled to a judgement as of June 30, 2005 in the amount of $1,494,207.02. (Id. at 8)

Defendants recognize that if Arkansas law governs the "loan documents," then plaintiff may be entitled to a deficiency judgment. However, if Missouri law controls, plaintiff's recovery is "absolutely barred" by its failure to give proper notice under the UCC of the repossession and sale of the John Deere Tractor and the Holden Flat Bed Trailer. (Defendants' Trial Brief at 14)

### A. Are the Loan Documents Ambiguous?

Defendants argue that the "loan documents" are ambiguous because they provide three generic references to the governing law, which references would lead to conflicting results. The original promissory note, Ex. 1, contained the following provisions:

> WACROSS, INC.
> HCR 60, BOX 1
> LANAGAN, MO 64847
>   **BORROWER'S NAME AND ADDRESS**
> "I" includes each borrower above, jointly and severally.

> FIRST GRAVETTE, BRANCH OF BANK OF BENTONVILLE
> P.O. BOX 500
> GRAVETTE, AR 72736
>
> **LENDER'S NAME AND ADDRESS**
> "You" means the lender, its successors and assigns
>
>       * * *
>
> **GENERALLY -** * * * If property described in this agreement is located in another state, this agreement may also, in some circumstances, be governed by the law of the state in which the Property is located.
>      *  *  *
> **APPLICABLE LAW** - The law of the state in which you are located will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

The guaranty agreement, Ex. 3, which was signed by Arnold and Shirley Landers defines "lender" as the First Gravette, Branch of Bank of Bentonville, P.O. Box 500, Gravette, Arkansas and "borrower" as Wacross, Inc. Paragraph 13 of the guaranty provides in part that "[t]his guaranty shall be governed by the laws of the state in which it is executed."

Although the bank has a Missouri branch, in all of the documents the Bank of Bentonville is described as located at Gravette, Arkansas. Thus, the provision in the promissory note indicating that the law of the state in which "you," meaning the lender, is located will govern would suggest that Arkansas law would apply. However, the guaranty agreements provided that the guaranty is governed by the law of the state in which it was executed.

The parties have stipulated that the "original loan documents" were executed by defendants the First Gravette Branch of the Bank of Bentonville in Arkansas. (Court Fact # 45) Although the parties did not define the term "original loan documents," the Court assumes that the parties are

9

referring to the original promissory note, line of credit agreements and guaranty agreements. After the original loan was made, subsequent loans were made and documentation concerning these loans was executed in both Missouri and Arkansas. (Court Fact # 46) After those loans went into default, a Forbearance Agreement, Ex. 25, was adopted; however, that agreement did not specify what law should apply. Rather, the Forbearance Agreement provided that both parties acknowledge that "all the terms of the promissory notes, security agreements, deeds of trust, guaranty agreements, and other document representing and securing the loans described herein ...remain in full force and effect and may be enforced against Borrower and Guarantor in accordance with the terms of the respective Loan Documents except as expressly modified by this agreement." (Ex. 25 ¶ 2) Thus, there was nothing in the Forbearance Agreement which modified the choice of law provisions contained in the promissory note and guaranty agreement.

Defendants' argument that the choice of law provisions in the various Loan Documents would produce conflicting results and hence is ambiguous, assumes that a guaranty obligation must be governed by the same law as the underlying promissory note. The promissory note is between Wacross and the Bank while the guaranty agreements are between the bank and various individuals. There is nothing that prohibits parties to a guaranty from agreeing to a choice of law provision different from that agreed to by the parties to the promissory note. They are two separate contracts.

Whether a contract is ambiguous is a question of law for the Court to determine from the four corners of the document. See Press Mach. Corp. v. Smith R.P.M. Corp., 727 F.2d 781, 784 (8th Cir. 1984). Thus, the argument that the language of the promissory note is rendered ambiguous by the language of the guaranty agreements must be rejected. It is well established that:

> An ambiguity exists in a written instrument when the wording is reasonably susceptible of different interpretations. Edgewater Health Care, 752 S.W.2d at 865.

> The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain meaning as understood by a reasonable average person. Jim Carlson Const., Inc. v. Bailey, 769 S.W.2d 480, 482 (Mo.App.1989). A contract is not rendered ambiguous by the fact that the parties differ as to the proper construction to be given it. Edgewater Health Care, 752 S.W.2d at 865.

Speedie Food Mart, Inc., v. Tylor, 809 S.W.2d 126, 129 (Mo. Ct. App. 1991).

The fact that the promissory note acknowledges that in certain circumstances, property located in another state may sometimes be governed by the law where it is located, does not render ambiguous the section of the note entitled "**APPLICABLE LAW**." That section plainly and unambiguously provides that the law of the state in which the lender is located will apply. Throughout these documents the lender's address is consistently stated as "Gravette, Arkansas. Thus, the fact that the bank was affiliated with a branch in Missouri does not render the location of "you" ambiguous. The only address ever provided in any of the documents for the bank is the address in Arkansas. Thus, the parties to the promissory note clearly agreed that the law of Arkansas would apply to their agreement.

Likewise, the language of the guaranty agreements is clear that these agreements are to be governed by the law of the place where they were executed.[1] Generally, a contract is made or executed where the last act necessary to form a binding contract occurs. See Johnson Heater Corp. v. Deppe, 86 S.W.3d 114, 119 (Mo. Ct. App. 2002). The fact that the various guaranty agreements may have been executed in different locations or that there may be conflicting evidence concerning where a guaranty agreement was executed does not create an ambiguity–merely an issue to be resolved by the trier of fact.

---

[1]Black's Law Dictionary defines execute as "To complete; to make.... To perform all necessary formalities, as to make and sign a contract,..."

11

Thus, none of the choice of law provisions in the various documents are ambiguous. Arkansas law was clearly chosen to apply to all of the promissory notes and the guaranty on the first note. The remaining guaranty agreements are governed by either Arkansas or Missouri law–an issue which need not be resolved, as shown below.

B. <u>Is the Choice of Law Provision Unenforceable?</u>

Defendants argue that the choice of law provisions are unenforceable[2] for the reasons that: (1) the rights of third parties are implicated by the security interests the plaintiff seeks to enforce under the loan documents; (2) the transactions do not bear a reasonable relationship to Arkansas; and (3) Section 400.1-105(2) R.S. Mo. should be applied in determining choice of law issues. In arguing that the rights of third parties are implicated, defendants rely on the decision in <u>Carlson v. Tandy Computer Leasing</u>, 803 F.2d 391 (8th Cir. 1986). In that case, the parties to a contract involving computer equipment were Brock, the lessee, and Tandy, the lessor. Following the execution of the contract, Brock filed a petition in bankruptcy. The Bankruptcy Trustee attempted to claim the computer equipment for the bankruptcy estate on the basis that Tandy's interest in the property was an unperfected security interest. Whether the contract was deemed a lease or an installment sales contract would determine whether Tandy could repossess the equipment or whether the Trustee had priority over Tandy with respect to the equipment. <u>Carlson</u>, 803 F.2d at 393. Thus, the interpretation of the contract had an impact on third party creditors. The parties to the contract had agreed that Texas law would apply, even though the equipment was located in Missouri.

---

[2]Defendants actually refer to the "Arkansas choice of law provisions" in arguing for the unenforceability of the parties' choice of law provisions. However, as previously discussed, the parties to the promissory notes agreed to be governed by Arkansas law while the guarantors agreed to be bound by the law of the jurisdiction where the contract was executed, which is not necessarily Arkansas.

However, citing section 1-105 of the Missouri UCC, the court noted that parties are generally free to choose which state's law shall govern, unless the dispute falls within the scope of section 9-102. The court further commented that because third parties were involved, this situation was "unlike those situations where only the rights of the parties privy to the initial choice of law agreement are implicated." Id. at 394.

In this case, the Bank seeks a judgment against individuals who signed the promissory note and the guarantors. The only defendants in the case who were not a party to one or more of the loan documents at issue are Leo Jack Davis and Jack Davis, Inc. who are alleged to be residents of Oklahoma with a security interest in some of the real estate that was pledged as security by the defendants for the loans in question. However, the case law and UCC articles cited by defendants involve conflict of law provisions relating to the perfection of security interest in personal property, which might impact the rights of third parties. Here, the only third parties involved in the lawsuit hold secured interests in real estate and it does not appear that the conflict of law provisions would adversely impact the rights of these creditors. Moreover, the language of the promissory notes recognized that when property is located in a state other than Arkansas–the agreement of the parties may be governed by the law of the state in which the property was located.

Finally, the argument that the transactions did not bear a reasonable relationship to Arkansas must be rejected. The loans were made by the Bank of Bentonville, an Arkansas banking corporation with its principal place of business in Benton County, Arkansas. (Court Fact # 1) The loan officer with whom the defendants dealt in connection with the loans was M. Malcolm Winters, who was the President of First Gravette Branch Bank of Bentonville. (Court Fact # 40) All of the loans made by the plaintiff to defendants were approved by committees of the plaintiff in Benton

County, Arkansas and all advances made on the loans were made from the offices of plaintiff in Benton County, Arkansas. (Court Fact # 44) The "original loan documents" executed in connection with the loans made by the plaintiff to Wacross, Inc. were executed by the defendants at the offices of the First Gravette Branch of the Bank of Bentonville in Gravette, Benton County, Arkansas. (Court Fact # 45) Thus, the choice of law provisions agreed to by the parties to the promissory notes, i.e. Arkansas, are not unenforceable.

    C.    <u>The Sale of Collateral</u>

Defendants argue that because Missouri followed the Absolute Bar Rule[3] and did not adopt the Rebuttable Presumption Rule[4] until January 1, 2003, plaintiff's failure to provide proper notice before selling the John Deere tractor and the Holden flat bed trailer absolutely bars plaintiff from collecting any deficiency on any of the notes. (Defendants' Trial Brief at 8-9)

Arkansas adopted the Rebuttable Presumption Rule on July 1, 2001, so there is no question that if Arkansas law applies, plaintiff may recover a deficiency judgment.[5] However, even if

---

[3]The Absolute Bar Rule "absolutely barred recovery of a deficiency judgment by creditors who failed to give proper notice to a debtor of the sale of collateral." (Defendants' Trial Brief at 7)

[4]Under the Rebuttable Presumption Rule:

> the repossession and sale of collateral by a secured party gave rise to a presumption that the sale proceeds were equal to the debt, thereby extinguishing the obligation once the proceeds were applied. However, the creditor may rebut this presumption if the creditor can prove that the collateral's value was less than the amount of the debt. If so, the creditor could still recover a deficiency judgment.

(Defendants' Trial Brief at 8)

[5]Defendants admit, "If Arkansas law governs the Loan Documents, then Plaintiff may be entitled to a deficiency judgment." (Defendants' Trial Brief at 9)

14

Missouri law controls, which the Court questions based on its finding that Arkansas law was clearly chosen to apply to all of the promissory notes and the guaranty on the first note, plaintiff would be entitled to a deficiency given that the collateral in question was sold after Missouri adopted the Rebuttable Presumption Rule.

The John Deere tractor was sold on November 20, 2003, and the Holden flat bed trailer was sold on December 6, 2003. (Court Fact # 49) The fact that these items were repossessed prior to January 1, 2003, the date of Missouri's adoption of the Rebuttable Presumption Rule, does not cause the Absolute Bar Rule to apply. The date of sale is the significant date. The notice requirement, the requirement that was allegedly violated by plaintiff, protects the debtor's right to redeem the collateral. See Executive Fin. Servs., Inc. v. Garrison, 722 F.2d 417, 419 (8th Cir. 1983). Accord Cherry Manor, Inc. v. American Health Care, Inc., 979 S.W.2d 817, 821 (Mo. Ct. App. 1990)("The purpose of statutory notice is to apprise the debtor of the details of a sale so that the debtor may take whatever action he deems necessary to protect his interest.") Until the collateral is sold, the debtor could redeem it. Thus, the debtor has suffered no loss from a lender's failure to provide proper notice until the collateral is actually sold. On November 20 and December 6, 2003, the dates on which collateral was sold in this case without proper notice, the rule in both Missouri and Arkansas was the Rebuttable Presumption Rule.

The parties are in agreement that the amount of proceeds the plaintiff would have realized had the plaintiff strictly complied with the provisions of the UCC relating to the collection, enforcement and disposition of the collateral would be in the amount of $229,750.00. (Court Fact # 50) Therefore, under the Rebuttable Presumption Rule, plaintiff is entitled to a deficiency judgment for the outstanding balance on the promissory notes less $195,560.50 ($229,750.00 less

15

any amounts actually received and applied to the loans, i.e., $34,189.50).

### III.  CONCLUSION

Based on the foregoing, it is

ORDERED that the Clerk of Court is directed to enter final judgment in favor of plaintiff and against defendants Wacross, Inc., Arnold Landers, Shirley Landers, Douglas A. Landers and Barbara C. Landers.

                                                  */s/ Sarah W. Hays*
                                                  SARAH W. HAYS
                                     UNITED STATES MAGISTRATE JUDGE